Missouri Pacific Railroad Company, Thompson,
Trustee *v.* Yates.

4-6540                                      156 S. W. 2d 889

Opinion delivered December 22, 1941.

*Henry Donham* and *Pat Mehaffy*, for appellant.

*J. H. Lookadoo,* for appellee.

Humphreys, J.   This suit was brought by appellee against appellant in the circuit court of Clark county to

recover $3,000 for alleged injuries received by him on account of being hit, through the alleged negligence of appellant's servants and agents, by a billet which fell twelve feet from a flat car in motion on the ice plant spur in Arkadelphia, Arkansas, first striking the ground and then bouncing around and hitting him at a time when he was in the exercise of all the care and precaution of any reasonable, prudent person for his own safety. It was alleged that at the time of the injury appellee was engaged in assisting Woodrow and Louis Orr in unloading pine billets from a truck belonging to Woodrow Orr and loading same on a flat car.

The complaint alleged in detail the manner in which the billets were being unloaded and loaded on the flat car and the progress and incidents in unloading and loading same up to the time of his injury and also the injury received and the extent thereof.

Appellant filed an answer denying each and every allegation in the complaint and alleged therein that appellee negligently failed to exercise any care for his own safety and negligently assumed a position close to appellant's train as it was moving, and that his own contributory negligence in assuming the dangerous position and failing to look out for his own safety caused his injury and they pleaded said contributory negligence on the part of appellee as a complete bar and defense to his right of recovery and prayed for a dismissal of appellee's complaint.

The court submitted all issues joined in the pleadings together with the testimony introduced by the respective parties and his instructions to the jury resulting in a verdict and consequent judgment for $3,000, from which is this appeal.

The main contention for reversal of the judgment is that there is no substantial evidence in the record to sustain the verdict and judgment. The testimony introduced, stated in the most favorable light to appellee, is to the effect that on July 8 or 9, 1940, appellee was engaged in assisting Woodrow and Louis Orr in unloading pine billets 5 or 6 inches through and about 5 feet long from Louis

Orr's truck onto a flat car constructed for the purpose of loading billets, which was the middle car in a train of five cars parked on the ice plant spur; that the two rear cars had been loaded by other parties and appellee and the Orrs knew nothing about the manner in which the same had been loaded; that the Orrs and appellee were signaled or notified that an inspection had been made of the two rear cars and that they were going to pull out the five cars onto the main line in order to disconnect and ship the two rear cars and that after doing so would switch the remaining three cars back to where they were so that the Orrs and appellee might finish loading it; that on receiving the signal Louis Orr moved his truck over about twelve or fifteen feet to a road or street that paralleled the track so as to be clear of the moving cars and appellee moved back to within six or seven feet of the track and was talking to Louis or Woodrow Orr with his back toward the train when one of them hollered to him to look out that a billet was falling off of one of the two back cars and that as he immediately turned toward the track or train a billet fell off of one of them downward about twelve feet and struck the ground and bounced and struck him in the side and back and knocked him down; that at the time he was standing where laborers engaged in such work usually stood when the train was moving; that he was picked up, put in the truck and taken home; that several days thereafter he went to see a chiropractor who treated him off and on for two or three weeks and finally told him that he could do nothing for him and that he had better go and see an M. D.; that he did not take the advice of the chiropractor and was not treated by any physician; that about five months thereafter he went to see Dr. R. L. Bryant who made an X-ray picture of him for the purpose of giving testimony in the case he had brought or intended to bring; that Dr. Bryant made an X-ray and other examination of him and testified that he had a protrusion in the left side of his chest at the lower part of the left ribs; that the X-ray revealed that there was a separation of the tenth rib in front of the eleventh rib, with a deformity of the cartilage on the tip or end of the tenth rib producing a pressure disturbance against

the wall of the chest and causing considerable pain to be referred to the back and side; that his first examination was on December 31, 1940, and that he again examined him on the 27th of January, 1941, for a check-up on his condition and again on the 31st of March following; that he found no change in his condition between the first and last examination; that perhaps his condition could be improved by surgery by taking off the cartilaginous portion of this rib; that it was questionable whether it should be done, because the resulting scar and injury to the wall and the after effects might be just as undesirable as the condition he has; that he regarded the injury as permanent and that he did not think he was or would be able to do hard labor.

Appellee testified that he had suffered much pain and inconvenience from the injury received and that he was unable to work at hard labor.

The record reflects that it would have been next to impossible for a billett to have fallen off of the car if they had been loaded as they should have been; that the car had a rack on the outside edge which makes the inside end of the billet lower than the outside end of the billet when loaded, that the billets are loaded by angling them in toward the center of the car so that the inside end of the billet will be lower than the outside end; that after they were loaded and before the train moved it was the custom of the railroad company to inspect the cars to see if they had been properly loaded; that some of the employees who were engaged in moving the car on the 8th or 9th of July, 1940, or both days, testified that they had made an inspection of the cars before the train was moved and found them properly loaded, but no details were given as to the manner in which the inspection was made and the particularity with which it was made.

Appellee also admitted that after the injury he made no complaint to appellants or any of their employes and presented no claim to them for the injury received by him.

This court said in the case of *Memphis, Dallas & Gulf R. R. Co.* v. *Yandell,* 123 Ark. 515, 185 S. W. 1096, that: "It is well settled in this state that it is the duty of the

carrier to exercise ordinary or reasonable care and diligence in moving its cars, to prevent injury to owners of freight and their employees rightfully engaged in loading or unloading cars.''

The duty rested upon appellant under the circumstances in this case to load the billets in such manner that they would not fall off or be thrown off in the movement of its train and also to inspect the cars after being loaded to see that they are properly loaded and a failure to do either or both of these things would be carelessness and negligence on their part.

It was a jury question to determine whether they had loaded the billets in the proper manner and whether they had made an inspection to see whether they were loaded in the proper manner.

The evidence is practically undisputed that if loaded properly it was next to impossible for them to fall off and that if they had made a reasonable inspection they could and would have discovered whether they were loaded in such a manner in that one or more of them would fall off when the train moved.

Under the facts detailed above the jury may well have found that they were not loaded as they should have been in the first instance or whether a reasonable inspection had been made to ascertain whether they were properly loaded.

There is ample substantial evidence to sustain the verdict of the jury to the effect that a careless or negligent inspection had been made. In other words, there is ample substantial evidence to find liability against appellants on account of injuring appellee.

Appellants suggest that appellee was guilty of contributory negligence as a matter of law. Even appellant's witnesses testified that appellee was standing where men engaged in work in and about the spur track, and others, stood when trains were being pulled out to the main track. Under the evidence appellee had a right to believe that proper inspection had been made of the rear cars and that they were properly loaded. He was not called upon to use

extraordinary care for his safety under the circumstances that he believed the rear cars had been properly loaded and inspected.

The next insistence for a reversal of the judgment is that instruction No. 1, given by the court over the objections of appellants, is erroneous because they proved by the undisputed evidence that a proper inspection had been made which overcame the presumption of negligence. We do not think the undisputed evidence showed that a proper or sufficient inspection had been made. The evidence is conflicting in that respect. All the evidence is that if a proper and correct inspection had been made the improper loading of the billets would have been discovered and remedied. It was a jury question as to whether the correct and proper inspection had been made.

Appellant next insists for a reversal of the judgment on the ground that it authorized the jury to return a verdict in favor of appellee for the full damages he sustained regardless of his negligence in failing to see a physician even after the chiropractor told him he should do so. The evidence does not reflect that on account of his failure to see a physician immediately his condition at this time or at the time the suit was tried was worse than it would have been had he employed a competent and skillful physician. Dr. R. L. Bryant stated that even if appellee had gone to an M. D. to start with that he could not say that his condition would be any better than it was at the time of the trial.

The fourth and last contention appellant makes for a reversal of the judgment is that the verdict and judgment are excessive.

It is remarkable that anyone receiving an injury such as appellee claims to have received would not have at once or within a reasonable time notified the party who had wrongfully injured him. Appellee made no claim to appellant that he had been injured by a falling billet of wood from a flat car on the 8th or 9th of July, 1940, until he brought the suit some five or six months thereafter. It is also passing strange that he never employed a physician to set his rib, if broken, or to treat

him, according to his own testimony, even after receiving advice from a chiropractor that he could not benefit him, and that he should go to an M. D. for treatment, and that he failed to do so. It is entirely out of the ordinary for a reasonable man to have received such an injury as appellee claims to have received without doing anything about it for six long months. His conduct indicates to us very clearly that he was not injured to the extent claimed, and that he was awarded a much larger sum than he was entitled to. We are impelled to believe, owing to his course of conduct after receiving the alleged injury, that it was slight, and that $750 is all that he ought to recover under the circumstances. We do not think that there is any substantial testimony justifying a larger verdict.

The judgment is, therefore, reduced to that amount and as modified is affirmed.

MEHAFFY, J., not participating.